UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD SPARKS AND JOANNE P. SPARKS,

    Plaintiffs,

v.

Case No. 10-13241
Honorable Julian Abele Cook, Jr.

THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, and BAC HOME LOAN SERVICING, LP,

    Defendants.

## ORDER

On July 21, 2010, the Plaintiffs, Donald Sparks and Joanne P. Sparks, who are husband wife, filed a complaint in the Macomb County (Michigan) Circuit Court, in which they have collectively accused the Defendants, *inter alia*, of violating their due process rights under the Fourteenth Amendment to the United States Constitution.[1]  On August 16, 2010, the Defendants caused the removal of the state action to this federal court on the basis of the diversity of citizenship between the parties, as well as its original jurisdiction over the Plaintiffs' federal due process claims.  *See generally,* 28 U.S.C. §§ 1331, 1441(a).

On October 22, 2010, the Defendants filed a joint motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).  As of this date, the Plaintiffs have not filed any pleadings in opposition. For the reasons that have been set forth below, the Defendants' motion to dismiss will be granted.

---

[1] The Plaintiffs have identified the Defendants in their complaint as the Federal National Mortgage Association  ("Fannie Mae"), the BAC Home Loan Servicing LP, and the BAC Home Loan Servicing, LP ("BAC") (collectively, "the Defendants").

I.

On March 20, 2007, the Plaintiffs refinanced their home at 46675 Glastonbury in Shelby Township, Michigan by entering into two residential loan transactions with Countrywide Home Loans, Inc. and Countrywide Bank, FSB (collectively, "Countrywide") in the amount of $236,000 and $29,500, respectively. As collateral to secure the loans, the Plaintiffs extended mortgages on their Glastonbury home to Mortgage Electronic Registration Systems, Inc. ("MERS"), in its capacity as the representative for Countrywide. At a later time, BAC became the entity that assumed the responsibility for servicing[2] the Plaintiffs' mortgage loans on behalf of Bank of America, the successor entity to Countrywide.

The parties agree that when the Plaintiffs fell behind on their monthly mortgage obligations in July of 2009, BAC initiated foreclosure proceedings on the Glastonbury property. In a presumed effort to comply with the foreclosure laws in Michigan, BAC claims to have (1) advertised the impending foreclosure sale on July 31, 2009 in the Macomb County Legal News for four consecutive weeks on July 2nd, July 9th, Jul 16th, and July 23rd of 2009, and (2) affixed a notice of the sale on the front door of the Plaintiffs' home. During this interim period, the Plaintiffs sought and obtained the assistance of a loss mitigation entity (Oak View Processing Company) to negotiate with BAC for the purpose of securing a loan modification. With an awareness by the Defendants that the Plaintiffs were involved in a continuing negotiation with BAC for a modification of their

---

[2]The Defendants note that according to the terms in the Real Estate Settlement Procedures Act ("RESPA"), "'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

2

loan obligations, the original date of the foreclosure sale was adjourned on a weekly basis until December 11, 2009. According to the Plaintiffs, they received a letter during the fall months (October or November) of 2009 from the Bank of America which addressed their potential participation in a federal government sponsored plan (Home Affordable Modification Program ("HAMP")). According to the Defendants, the Sparks were subsequently advised that they would be ineligible for a loan modification based on their finances. As a result, the parties never executed a modification agreement, and BAC proceeded thereafter with its efforts to finalize the foreclosure process of the Plaintiffs' home. Their property was ultimately acquired by MERS on December 11, 2009 at a foreclosure sale, and later quit-claimed to Fannie Mae. According to the Defendants, the statutory redemption period expired on June 11, 2010, without the Sparks ever attempting to redeem the house on Glastonbury.

However, the Plaintiffs assert that they were unaware until April of 2010 that (1) a sheriff's sale had been conducted on their home, and (2) the statutory redemption period for the sale had expired in December of the preceding year.[3] On the basis of this "new" information, they wrote to Bank of America on the 1st and 15th of June 2010, seeking to determine the financial and legal status of their home. Claiming that they never received any notice of the sheriff's sale which, in turn, had precluded them from taking more immediate measures to salvage their home interests, the Plaintiffs initiated this lawsuit on July 21, 2010.[4]

---

[3]According to the Plaintiffs, they discovered this information when a realtor stopped by their house to inform them that it had been sold at a sheriff's sale in June of 2009.

[4]There is confusion and/or disagreement among the parties about some of the dates that are relevant to this controversy. If the Plaintiffs are correct, the sheriff's sale was conducted in June of 2009, with the statutory redemption period expiring in December of 2009. On the other hand, if the Defendants are correct, the sale took place in December of 2009, with the statutory

3

II.

The Defendants urge the Court to dismiss this lawsuit on the basis of Fed. R. Civ. P. 12(b)(6), which allows the judge to assess whether the complaint has stated a claim upon which relief may be granted. Generally, when considering a motion to dismiss, the Court must construe the complaint in a light that is most favorable to the plaintiffs, accept their factual allegations as being true, and draw all reasonable factual inferences in the plaintiffs' favor. *Tipton v. Corr. Med. Services, Inc.*, No. 08-421, 2009 WL 2135226 (W.D. Mich. July 15, 2009). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Claims are capable of surviving a Rule 12(b)(6) motion only if the "[f]actual allegations [are] enough to raise a right to relief above the speculative level . . . on the assumption that all [of] the allegations in the complaint are true . . . ." *Twombly*, 550 U.S. at 555. As emphasized by *Iqbal*, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is "plausible" on its face:

> [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief. *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)) (internal citations omitted).

*Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)) (internal citations omitted).

Turning now to the Defendants' quest for the entry of a dismissal of the complaint, the

---

redemption period expiring in June of 2010.

Court will assess all of the arguments *seriatim*.

A.

The Defendants correctly note that the first count, titled "Violation of Due Process," does not set forth any legal claim. Rather, it contains twenty general allegations that are applicable to the entire complaint. Inasmuch as the Plaintiffs reserved their due process arguments for Count III of their complaint, the Court will not undertake a substantive analysis of Count I.

B.

The Defendants urge the Court to dismiss the Plaintiffs' claim for promissory estoppel. It should be noted that promissory estoppel is available as an equitable remedy if there is "(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of promisee, (3) which in fact produced reliance or forbearance . . . , and (4) in circumstances such that the promise must be enforced if injustice is to be avoided." *Ardt v. Titan Ins. Co.*, 233 Mich. App. 685, 692 (1999). Michigan courts are encouraged to apply the doctrine of promissory estoppel cautiously. Furthermore, in order to prevail on such a claim, the alleged promise must be definite and clear. *Barber v. SMH (US), Inc.*, 202 Mich. App. 366, 376 (1993). It is the last element – a definite and clear promise – that is missing here.

In their complaint, the Plaintiffs have never contended that BAC promised to grant them a loan modification. Quite the opposite, their pleadings indicate that the Plaintiffs and the bank were involved in negotiations to determine if a loan modification was appropriate under the circumstances. Indeed, the only allegations that are remotely suggestive of a promise by the Defendants' appear in ¶¶ 22-27, where the Plaintiffs note that (1) they believed that the BAC was negotiating for a modification in good faith, (2) the Defendants failed to provide them with proper

5

loan modification documents, and (3) they reasonably relied on the Defendants to follow through in forwarding the loan documents to the proper authorities. Even if true, these allegations only point to omissions by the Defendants. More importantly, these omissions do not suggest or demonstrate that the Defendants made any affirmative, clear promise to do a certain act. Under these circumstances, the Court is unable to assess the content, the nature or the scope of any alleged promise, or whether it was reasonable for BAC to expect that any of its statements would have induced the Plaintiffs to engage in certain acts or omissions. In the absence of such well-pled factual support within the body of the complaint, the Plaintiffs' claim of promissory estoppel must fail.

Even if this aspect of the complaint had been adequately pled, the Plaintiffs attempt to seek relief on this ground would be barred by the statute of frauds. *See* Mich. Comp. Laws § 566.132(2). This statute prevents certain types of lawsuits from being filed against financial institutions without adequate documentation:

> (2) An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
>
> (a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.
>
> (b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.
>
> (c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

*Id.* An agreement to modify the terms of a loan is subject to the statute of frauds. *See generally*, *Jarbo v. BAC Home Loan Servicing,* No. 10-12632, 2010 WL 5173825, *11 (E.D. Mich. Dec. 15,

2010) ("The plain language of Michigan's statute of frauds also precludes Plaintiffs from bringing claims alleging the breach of an unwritten promise to modify or delay repayment of their mortgage loans."); *Crown Technology Park v. D & N Bank*, 242 Mich. App. 538, 551 (2000) ("[Section 566.132] plainly states that a party is precluded from bringing a claim-no matter its label-against a financial institution to enforce the terms of an oral promise to waive a loan provision."). Because this statute precludes the oral modification of a bank loan (or any promises to undertake such a modification), the Plaintiffs' attempt to enforce any such agreement is invalid. Therefore, the Defendants' motion to dismiss Count II of the Plaintiffs' complaint must be, and is, granted.

C.

Next, the Defendants seek the dismissal of Count III of the complaint, in which the Plaintiffs seek damages for violations of their rights to due process under the Fourteenth Amendment to the Constitution. This Amendment provides in pertinent part that "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; . . . ." U.S. Const. Am. XIV. In order to prevail on a due process claim, "a party must have a property or liberty interest of which it is deprived by state action, as the Fourteenth Amendment 'erects no shield against merely private conduct, however discriminatory or wrongful.'" *Lucre, Inc. v. Michigan Bell Telephone Co.*, 238 Fed. Appx. 18, 22, (6th Cir. 2007) (unpublished) (citing *Blum v. Yaretsky*, 457 U.S. 991, 1002, (1982) ("[A]ction inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States.")).

Here, the Plaintiffs, despite having accused the Defendants of depriving them of a property right, have failed to establish that either Defendant is a state actor. BAC, in its capacity as a private

bank, certainly does not satisfy this description under these circumstances. Moreover, the Defendants properly point out that although Fannie Mae is a federally chartered corporation, the Sixth Circuit has declined invitations to view its conduct through the lens of a state action. *Northrip v. Federal National Mortgage Association*, 527 F.2d 23, 33 (6th Cir. 1975) ("[w]e believe that FNMA is sufficiently analogous to [a] public utility . . . so that its actions should not be considered those of the state.").[5] Because the Plaintiffs have not adequately identified any actionable conduct by a state actor in their complaint, this count must also fail.[6]

### D.

The Defendants also seek dismissal of Count IV of the Plaintiffs' complaint for breach of an implied contract to negotiate in good faith. As the Defendants properly note, no such cause of action exists under Michigan law inasmuch as the responsibility to negotiate with good faith and fair dealing are duties that are imposed in contract. *LaSalle National Leasing Corp., v. Lyndecon, LLC*, 409 F. Supp. 2d 843, 847 (E.D. Mich. 2005); *See also, Kelley v. Thompson-McCully Co., LLC,* No. 236229, 2004 WL 1676760 at *8 (Mich. App. July 27, 2004) ("Michigan common law . . . recognizes an implied covenant of good faith and fair dealing that applies to the performance

---

[5]The *Northrop* court identified other considerations for courts to examine when applying this general rule. However, the Court believes that given the private, routine nature of the foreclosure proceedings at issue here (originating from a contract), all of the pertinent factors weigh in the Defendants' favor. *See* 527 F.2d at 33 ("several factors [are] to be considered in determining whether state action exists. Such a finding 'hinges on the weighing of a number of variables, principally the degree of government involvement, the offensiveness of the conduct, and the value of preserving a private sector free from the constitutional requirements applicable to government institutions.'").

[6]In light of this resolution, the Court declines the Defendants' invitation to rule, as a matter of law, that the Plaintiffs were provided with proper notice of the foreclosure sale. Accepting the Defendants' argument would require the Court to violate its duty to accept the allegations within the Plaintiffs' complaint as true in evaluating this Rule 12(b)(6) motion.

and enforcement of contracts . . . . The implied covenant of good faith and fair dealing essentially serves to supply limits on the parties' conduct when their contract defers decision on a particular term, omits terms or provides ambiguous terms.") (quoting *Hubbard Chevrolet Co. v. General Motors Corp.*, 873 F.2d 873, 876-77 (5th Cir. 1989)); *Ulrich v. Federal Land Bank*, 192 Mich. App. 194, 197 (1991) ("Michigan does not recognize an independent tort action for an alleged breach of a contract's implied covenant of good faith and fair dealing.").

Because the Plaintiffs could not prevail on this claim as a matter of law in Michigan, the Defendants' motion to dismiss Count IV of the complaint must be, and is, granted.

E.

Finally, the Court will grant the Defendants' motion to dismiss the Plaintiffs' remaining count which contains allegations relating to the infliction of emotional distress and mental anguish. The complaint does not specify whether the Plaintiffs are proceeding under a theory of intentional or negligent infliction of emotional distress. Though the Michigan Supreme Court has never officially recognized the former cause of action, *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594 (1985), the Court of Appeals has. Thus, to prevail on a claim of an intentional infliction of emotional distress, a plaintiff must plead and prove the existence of "(1) 'extreme and outrageous' conduct; (2) intent or recklessness; (3) causation; and (4) 'severe emotional distress.'" *Linebaugh v. Sheraton Mich. Corp.,* 198 Mich. App. 335, 342 (1993). Liability will only be found where "the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. " *Id.*

Here, the complaint alleges that it was the Defendants' duty "to refrain from conduct that

would cause plaintiffs emotional distress," and generally, that the Defendants breached their duty to the plaintiffs in this regard. They identify no specific conduct on the Defendants' part that they deem to be "extreme and outrageous," and do not even allege that they have suffered any form of emotional distress that would qualify as being "severe." Under the standards set forth in *Iqbal* and *Twombly, supra*, the complaint lacks facts from which the Court could plausibly conclude that the Defendants' behavior was atrocious, or intolerable, or otherwise beyond decency. As such, the Plaintiffs' claim for intentional infliction of emotional distress must fail. *See generally, Ursery v. Option One Mortgage Corp.*, No. 271560, 2007 WL 2192657,*16 (Mich. App. July 31, 2007) ("the essence of [the Plaintiff's] argument is that [the bank] breached contracts with him in various ways and foreclosed on his property. This type of activity does not rise to the level of conduct necessary to satisfy the standard in Michigan case law."). Nor can the Plaintiffs' cause of action for negligent infliction of emotional distress survive inasmuch as the elements of this tort plainly do not apply under the facts presented here. *See, Taylor v. Kurapati,* 236 Mich. App. 315, 360 (1999) ("A plaintiff may recover for negligent infliction of emotional distress where (1) the injury threatened or inflicted on the third person is a serious one, of a nature to cause severe mental disturbance to the plaintiff, (2) the shock results in actual physical harm, (3) the plaintiff is a member of the third person's immediate family, and (4) the plaintiff is present at the time of the accident or suffers shock "fairly contemporaneous" with the accident."). Accordingly, the Defendants' motion to dismiss this count of the Plaintiffs' complaint must be, and is, granted.

### III.

Therefore and for the reasons stated above, the Court grants the Defendants' motions to dismiss the complaint in its entirety and with prejudice.

IT IS SO ORDERED.

Dated:  March 24, 2011              s/Julian Abele Cook, Jr.
       Detroit, Michigan              JULIAN ABELE COOK, JR.
                                                United States District Court Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 24, 2011.

                                                     s/ Kay Doaks
                                                     Case Manager